BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
LINDSAY M. BAILEY (Cal. Bar No. 285047)
ALIX R. SANDMAN (Cal. Bar No. 313430)
Assistant United States Attorneys
Violent & Organized Crime/General Crimes Section
     1300/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6875/6772
     Facsimile: (213) 894-0141
     E-mail: lindsay.bailey@usdoj.gov
          alix.sandman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>JOSE ANTONIO BONILLA,<br><br>       Defendant. | No. 2:25-CR-00259-WLH<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT[1] UNDER 8 U.S.C. § 1326(d); DECLARATION OF LINDSAY M. BAILEY<br><br>Hearing Date: May 28, 2025<br>Time:       10:30 a.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Lindsay M. Bailey and Alix R. Sandman, hereby submits its opposition to defendant JOSE

---

[1] Defendant's motion is titled "Motion to Dismiss Information." (Dkt. 39.)  However, defendant was charged by Indictment, not Information, in this case.

ANTONIO BONILLA's Motion to Dismiss Indictment Under 8 U.S.C. § 1326(d).  (Dkt. 39.)

This Opposition is based upon the attached memorandum of points and authorities, the Declaration of Lindsay M. Bailey and its exhibits, the files and records in this case, and such further evidence and arguments as the Court may permit.

Dated: May 21, 2025                    Respectfully submitted,

                                       BILAL A. ESSAYLI
                                       United States Attorney

                                       CHRISTINA T. SHAY
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                         /s/
                                       LINDSAY M. BAILEY
                                       ALIX R. SANDMAN
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   BACKGROUND....................................................1

III.  LEGAL STANDARD................................................3

IV.   ARGUMENT......................................................3

      A.    Defendant Cannot Collaterally Attack His TPS
            Determination...........................................3

      B.    Defendant Was Not Deprived of Judicial Review...........4

      C.    Defendant's Deportation Order Was Not Fundamentally
            Unfair..................................................6

            1.    Defendant's Due Process Rights Were Not Violated
                  Through Denial of TPS.............................6

                  a.    TPS is a Discretionary Privilege...........6

                  b.    Defendant Was Not Statutorily Eligible for
                        TPS........................................8

                  c.    Defendant was not prejudiced by USCIS'
                        withdrawal of his Temporary Protected Status...10

            2.    The IJ Did Not Violate Defendant's Due Process
                  Rights by Impeaching Defendant with his
                  Underlying Conviction Documents..................11

                  a.    Impeachment Evidence Is Admissible During
                        Immigration Proceedings....................11

                  b.    Defendant did not suffer prejudice from the
                        IJ's consideration of law enforcement
                        reports related to his conviction..........13

V.    CONCLUSION...................................................14

**TABLE OF AUTHORITIES**

Cases

Alonso-Juarez v. Garland,
    80 F.4th 1039 (9th Cir. 2023) .................................... 5

Anaya-Ortiz v. Holder,
    594 F.3d 673 (9th Cir. 2010) .................................... 11

Angov v. Lynch,
    788 F.3d 893 (9th Cir. 2015) .................................... 12

Bogle v. Garland,
    21 F.4th 637 (9th Cir. 2021) .................................... 11

Brown v. Holder,
    763 F.3d 1141 (9th Cir. 2014) .................................... 7

Dent v. Sessions,
    900 F.3d 1075 (9th Cir. 2018) .................................... 7

Espinoza v. INS,
    45 F.3d 308 (9th Cir. 1995) ................................. 11, 14

Hernandez v. Garland,
    52 F.4th 757 (9th Cir. 2022) .................................... 14

INS v. Yang,
    519 U.S. 26 (1996) .............................................. 7

Manrique v. United States,
    581 U.S. 116 (2017) ............................................. 5

Matter of D-R-,
    25 I&N Dec. 445 ................................................ 13

Matter of M-H-,
    26 I&N 46 (BIA 2012) ........................................... 13

Matter of N-A-M-,
    24 I. & N. Dec. 336 (B.I.A. 2007) .............................. 11

Matter of Tomas,
    21 I&N Dec. 20 (1995) .......................................... 11

Mejia-Rodriguez v. U.S. Dept. of Homeland Sec.,
    562 F.3d 1137 (11th Cir. 2009) .................................. 6

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                        PAGE

Munoz v. Ashcroft,
    339 F.3d 950 (9th Cir. 2003) ........................................ 7

Nicanor-Romero v. Mukasey,
    523 F.3d 992 (9th Cir. 2008) ........................................ 8

Nutraceutical Corp. v. Lambert,
    586 U.S. 188 (2019) ................................................. 5

Parilla v. Gonzales,
    414 F.3d 1038 (9th Cir. 2005) ....................................... 9

Radojkovic v. Holder,
    599 F. App'x 646 (9th Cir. 2015) .................................. 14

Saidane v. I.N.S.,
    129 F.3d 1063 (9th Cir. 1997) ...................................... 12

Sanchez v. Holder,
    704 F.3d 1107 (9th Cir. 2012) ........................... 11, 12, 14

Santos-Zacaria v. Garland,
    598 U.S. 411 (2023) ................................................. 5

Smith v. Ashcroft,
    295 F.3d 425 (2002) ................................................. 4

Tokatly v. Ashcroft,
    371 F.3d 613 (9th Cir. 2004) ........................................ 8

Tovar-Landin v. Ashcroft,
    361 F.3d 1164 (9th Cir. 2004) ....................................... 7

Trias-Hernandez v. INS,
    528 F.2d 366 (9th Cir. 1975) ....................................... 11

United States v. Almazan-Becerra,
    537 F.3d 1094 (9th Cir. 2008) ....................................... 9

United States v. Alvarez-Gutierrez,
    394 F.3d 1241 (9th Cir. 2005) ...................................... 10

United States v. Arias-Ordonez,
    597 F.3d 972 (9th Cir. 2010) ........................................ 6

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Barajas-Alvarado,
    655 F.3d 1077 (9th Cir. 2011) ................................... 10

United States v. Baron-Medina,
    187 F.3d 1144 (9th Cir. 1999) ................................... 10

United States v. Corrales-Beltran,
    192 F.3d 1311 (9th Cir. 1999) ................................... 10

United States v. Flores,
    901 F.3d 1150 (9th Cir. 2018) ................................... 10

United States v. Gonzalez-Villalobos,
    724 F.3d 1125 (9th Cir. 2013) .................................... 5

United States v. Guzman-Velasquez,
    919 F.3d 841 (11th Cir. 2019) .................................... 4

United States v. Mendoza-Lopez,
    481 U.S. 828 (1987) .............................................. 4

United States v. Pallares-Galan,
    359 F.3d 1088 (9th Cir. 2004) ............................ 8, 9, 10

United States v. Palomar-Santiago,
    141 S.Ct. 1615 (2021) ............................................ 3

United States v. Raya-Vaca,
    771 F.3d 1195 (9th Cir. 2014) ................................... 10

United States v. Reyes-Bonilla,
    671 F.3d 1036 (9th Cir. 2012) .................................... 6

United States v. Rivera-Sanchez,
    247 F.3d 905 (9th Cir.2001) ...................................... 8

Wang v. Attorney Gen.,
    898 F.3d 341 (3d Cir. 2018) ..................................... 12

Statutes

8 U.S.C. § 212(a)(6)(A)(i)........................................... 2
8 U.S.C. § 1101(a)(43)(A).......................................... 9, 10
8 U.S.C. § 1254a(a)(1)(A)............................................ 6
8 U.S.C. § 1326................................................. passim
Cal. Penal Code § 647.6(a)..................................... 1, 8, 9

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3

By his motion, defendant impermissibly seeks to expand the scope

4

of 8 U.S.C § 1326(d) to allow this Court jurisdiction to review the

5

denial of his application for temporary protected status ("TPS").

6

Not only is his request foreclosed by statute, defendant failed to

7

timely petition the Court of Appeals for relief.  He therefore cannot

8

establish that he was deprived of the opportunity for judicial

9

review.  Nor can he establish that the entry of his deportation order

10

was fundamentally unfair.  As such, defendant's motion should be

11

denied.

12

**II.   BACKGROUND**

13

Defendant first entered the United States illegally in 2000.

14

(Def. Ex. I at USAO_00043.)  On April 29, 2001, defendant applied for

15

and received TPS.  (Declaration of Lindsay M. Bailey [Bailey Decl.],

16

Ex. 1 at USAO_000168.)  On April 22, 2010, defendant was convicted of

17

molesting a child, in violation of California Penal Code § 647.6.

18

(Def. Ex. J at USAO_001299.)

19

On August 10, 2012, United States Citizenship and Immigration

20

Services ("USCIS") withdrew defendant's application for TPS on the

21

basis of his conviction, which they classified as an aggravated

22

felony.[1]  (Def. Ex. C; Bailey Decl., Ex. 1.)  On December 7, 2012,

23

the Department of Homeland Security ("DHS") commenced removal

24

proceedings against defendant for remaining in the United States

25

26

_____

[1] Defendant reapplied for TPS on August 1, 2013, during the

27

pendency of his removal proceeding, which was later granted through
March 9, 2015; however, in March 2015, when defendant applied for re-

28

registration, USCIS denied his application based on their discretion.
(Bailey Decl., Ex. 2, Ex. 3 at USAO_001028; Def. Ex. G.)

without being admitted or paroled, in violation of 8 U.S.C. § 212(a)(6)(A)(i).  (Bailey Decl., Ex. 4.)  During his initial removal proceeding on June 27, 2013, defendant admitted his alienage, that he entered the country without inspection, and that he was subject to removal under § 212(a)(6)(A)(i).  (Ex. 4; Bailey Decl., Ex. 5 at USAO_000998.)  Defendant does not challenge any of these findings.

In 2017, the immigration court held a series of proceedings to evaluate defendant's request for TPS, asylum, protection under the Convention Against Torture ("CAT"), and withholding of removal under § 241(b)(3).  During these proceedings, the Immigration Judge ("IJ") took testimony from defendant and admitted into evidence certain materials from defendant's 2010 conviction.  (Def. Ex. J.)  On January 9, 2018, the IJ found that defendant "ha[d] not been a credible witness," ultimately exercising the Attorney General's discretion in denying defendant's request for TPS, in large part based on defendant's "absence of candor" and "efforts to blame the victim" in his underlying criminal case.  (Def. Ex. I at 9.)  The IJ also denied defendant's requests for asylum, CAT protection, and withholding of removal.  (Id. at 10-19.)  Finally, the IJ ordered defendant to voluntarily depart within 60 days of the date of the order, with an alternative order of removal to El Salvador.  (Id. at 21.)

Defendant subsequently appealed to the Board of Immigration Appeals ("BIA"), which upheld the IJ's decision and ordered defendant removed on July 10, 2019.  (Bailey Decl., Ex. 6 at USAO_000033.) On August 12, 2019, defendant filed his appeal with the Ninth Circuit Court of Appeals, two days after his statutory deadline.  (Def. Ex. J

1    at USAO_000922.)  Upon a motion by the government, defendant's appeal

2    was dismissed as untimely.  (Id.)

3    **III.  LEGAL STANDARD**

4       A non-citizen charged with illegal reentry has a "limited right"

5    to collaterally attack the validity of a removal order underlying a

6    charged violation of 8 U.S.C. § 1326.  See 8 U.S.C. § 1326(d).  "That

7    section provides that a defendant charged with unlawful reentry may

8    not challenge their underlying removal orders unless they demonstrate

9    that three conditions are met: (1) they have exhausted any

10    administrative remedies, (2) they were deprived of the opportunity

11    for judicial review, and (3) the entry of the order was fundamentally

12    unfair." United States v. Palomar-Santiago, 141 S.Ct. 1615, 1620-21

13    (2021) (internal quotations removed).  "These requirements are

14    connected by the conjunctive 'and,' meaning defendants must meet all

15    three."  Id.

16    **IV.  ARGUMENT**

17       **A.  Defendant Cannot Collaterally Attack His TPS Determination**

18       As an initial matter, defendant does not challenge the validity

19    of his deportation order, nor does he claim some defect in the

20    process of his removal.  Rather, his focus is solely on USCIS's

21    initial withdrawal of his TPS application and the IJ's subsequent

22    discretionary denial of TPS.  In essence, defendant claims that, but

23    for the initial purported wrongful denial of his TPS application,

24    defendant would not have been subject to deportation and placed in

25    removal proceedings.  (Mot. at 8:15-17.)  He therefore does not

26    contest the validity of his deportation order, but the fact that he

27    was placed in deportation proceedings at all.

28       8 U.S.C. § 1326(d), however, allows only for a "collateral

attack on [an] underlying *deportation order*." (emphasis added). Indeed, the plain text of the statute only contemplates a challenge against "the validity of the deportation order" that is the basis of the criminal proceeding, and defendant is tasked with establishing that "the entry of *the order* was fundamentally unfair." Id. (emphasis added). Courts have similarly held that such a right is limited to "review of whether the prior deportation order was lawful," noting that "[i]t is an overly expansive, and in fact, an incorrect, reading of Mendoza-Lopez to suggest that that the Constitution requires 'meaningful review' of any and all administrative procedures." Smith v. Ashcroft, 295 F.3d 425, 431 (2002) (quoting United States v. Mendoza-Lopez, 481 U.S. 828 (1987)).

Defendant makes no attempt to argue that the denial of his TPS application is equivalent to an Order of Removal, nor can he. See, e.g., United States v. Guzman-Velasquez, 919 F.3d 841, 846 (11th Cir. 2019) ("As [defendant] acknowledges, § 1326(d) offers him no refuge: its plain text limits collateral challenges to *removal orders,* and [defendant] does not question the validity of his removal order. He instead challenges USCIS's *denial of TPS* as violative of the Due Process Clause...") (emphasis in original). As such, he is precluded from making such a claim under the plain text of § 1326(d).

**B.    Defendant Was Not Deprived of Judicial Review**

Assuming, arguendo, that defendant could challenge his TPS determination under § 1326(d), defendant's claim that he was deprived the opportunity for judicial review is without merit. "[W]here the defendant has failed to identify any obstacle that prevented him from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. §

4

1  1326(d)."  <u>United States v. Gonzalez-Villalobos</u>, 724 F.3d 1125, 1132

2  (9th Cir. 2013).

3      After defendant's initial TPS application was withdrawn, he

4  sought review from the IJ, the BIA, and the Ninth Circuit.  His Ninth

5  Circuit appeal was ultimately dismissed as untimely, but defendant's

6  failure to timely file his appeal is a problem of his own making.

7  Defendant acknowledges that he waited until just *two days* before the

8  deadline to send the appeal via mail, taking the risk that he was not

9  allowing sufficient time for his appeal to be received and filed by

10 the Court.  Nor is this the first time that defendant was cautioned

11 regarding the importance of timeliness.  On August 15, 2017, the IJ

12 warned defendant of the importance of punctuality, admonishing

13 defendant that failure to timely appear at future proceedings could

14 result in adverse consequences. (Bailey Decl., Ex. 7 at USAO_001129-

15 USAO_001130.)  Still, defendant made the decision to wait until the

16 last minute to mail his appeal, assuming the risk that it would not

17 be processed by the filing deadline.

18     Although the Ninth Circuit has since determined that the 30-day

19 filing deadline was non-jurisdictional, this alone is not

20 dispositive.  The 30-day deadline remains statutorily mandated and

21 "govern[s] how courts and litigants operate within" the bounds of a

22 court's authority to adjudicate cases.  <u>Santos-Zacaria v. Garland</u>,

23 598 U.S. 411, 416 (2023).  Though a mandatory claims processing rule

24 can be subject to waiver and forfeiture, it is "unalterable" if

25 properly raised by the opposing party.  <u>Nutraceutical Corp. v.</u>

26 <u>Lambert</u>, 586 U.S. 188, 192 (2019) (citing <u>Manrique v. United States</u>,

27 581 U.S. 116, 121 (2017)).  Here, unlike in <u>Alonso-Juarez v. Garland</u>,

28 80 F.4th 1039, 1043 (9th Cir. 2023), defendant's petition for review

1   was untimely, and the government did move to dismiss, thereby

2   preserving the argument for the court's review.  As such, the Ninth

3   Circuit's dismissal was appropriate.

4       **C.   Defendant's Deportation Order Was Not Fundamentally Unfair**

5       Defendant cannot establish that the entry of his deportation

6   order was fundamentally unfair.  A removal order qualifies as

7   fundamentally unfair only "when the deportation proceeding violated

8   the [non-citizen]'s due process rights and the [non-citizen] suffered

9   prejudice as a result." United States v. Reyes-Bonilla, 671 F.3d

10  1036, 1043 (9th Cir. 2012) (quoting United States v. Arias-Ordonez,

11  597 F.3d 972, 976 (9th Cir. 2010)).  Here, defendant cannot establish

12  either that the initial denial of his TPS nor the Court's

13  consideration of impeachment evidence resulted in a proceeding that

14  was fundamentally unfair.

15          1.   Defendant's Due Process Rights Were Not Violated

16              Through Denial of TPS

17            *a.   TPS is a Discretionary Privilege*

18      Even assuming defendant can challenge the denial of TPS as part

19  of his deportation order, TPS is discretionary relief that is

20  ultimately vested with the Attorney General.  8 U.S.C. §

21  1254a(a)(1)(A) ("the Attorney General, in accordance with this

22  section -- may grant the alien temporary protected status...")

23  (emphasis added); see also Mejia-Rodriguez v. U.S. Dept. of Homeland

24  Sec., 562 F.3d 1137, 1143 (11th Cir. 2009) ("The ultimate decision of

25  whether to grant TPS to an alien is undisputedly within the

26  discretion of the Secretary [of Homeland Security]").  "Since

27  discretionary relief is a privilege created by Congress, denial of

28  such relief cannot violate a substantive interest protected by the

1  Due Process clause." Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir.

2  2003) (citing INS v. Yang, 519 U.S. 26, 30 (1996)).  "Because there

3  is no constitutionally protected liberty interest in the

4  discretionary privilege of [temporary protected status], the due

5  process claim fails."  Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1167

6  (9th Cir. 2004).

7      Defendant's repeated cites to the "deliberate indifference"

8  standard set forth in Dent v. Sessions, 900 F.3d 1075 (9th Cir.

9  2018), are misplaced.  In Dent, the Court found that a petitioner

10 could establish a due process violation specifically when showing

11 that the INS was "deliberately indifferent *to whether [defendant's]*

12 *application [for citizenship] was processed*."  Id. at 1083 (citing

13 Brown v. Holder, 763 F.3d 1141, 1150 (9th Cir. 2014)) (emphasis

14 added).  This is because the defendant "had a right to apply for

15 citizenship, established by federal law," and therefore his

16 constitutional right to due process was violated if the INS

17 "arbitrarily and intentionally obstructed his application."  Brown v.

18 Holder, 763 F.3d 1141, 1148-49 (9th Cir. 2014).

19     Defendant's statutory eligibility for TPS does not equate to an

20 entitlement as it does with citizenship; indeed, during the

21 underlying immigration proceedings, the parties assumed that

22 defendant was statutorily eligible for TPS and therefore proceeded

23 solely on the issue of whether he should receive relief under the

24 Attorney General's discretion.  (Ex. 3, USAO_001029; Def. Ex. I at 4-

25 5.)  Defendant has not and cannot cite to any case law establishing

26 that he has due process rights or is entitled to this discretionary

27 form of immigration relief such that the "deliberate indifference"

28

7

1  standard would apply.  Rather, the law is clear that defendant is not

2  entitled to due process protections for discretionary privileges.

3         b.   *Defendant Was Not Statutorily Eligible for TPS*

4         Defendant is also incorrect in asserting that he was statutorily

5  eligible for TPS following his conviction.  While the Ninth Circuit

6  has held that defendant's statute of conviction, Cal. Penal Code §

7  647.6(a), is not a *categorical* match to the federal definition of

8  sexual abuse, it has also repeatedly held that the statute is

9  divisible such that the modified categorical approach applies.

10  United States v. Pallares-Galan, 359 F.3d 1088, 1102-03 (9th Cir.

11  2004) ("Because we conclude that § 647.6(a) reaches not only conduct

12  that would constitute the aggravated felony of 'sexual abuse' but

13  conduct that would not, we next apply the 'modified categorical'

14  test, under which we look to the pertinent documents in the record in

15  order to determine whether the government has shown that [defendant]

16  pled guilty to conduct comprehended within the scope of the federal

17  provision."); see also Nicanor-Romero v. Mukasey, 523 F.3d 992, 999

18  (9th Cir. 2008) ("To determine if his misdemeanor conviction under §

19  647.6(a) is a conviction for a 'crime involving moral turpitude,' we

20  apply the categorical and modified-categorical approaches.").

21         In using the modified categorical approach, courts may look

22  beyond the plain language of the statute and instead examine

23  "documentation or judicially noticeable facts" to determine whether

24  the conviction is, in fact, a match to the federal statute.

25  Pallares-Galan, 359 F.3d at 1099 (quoting United States v. Rivera-

26  Sanchez, 247 F.3d 905, 908 (9th Cir.2001) (en banc)).  Such documents

27  include "the judgment of conviction, jury instructions, a signed

28  guilty plea, or the transcript from the plea proceedings."  Tokatly

8

1    v. Ashcroft, 371 F.3d 613, 620 (9th Cir. 2004).  The Ninth Circuit

2    has further held that a "stipulation (that the police reports

3    contained a factual basis for [defendant's] plea) incorporated the

4    police reports into the plea colloquy," and thus could properly be

5    relied on by the district court in conducting the modified

6    categorical approach.  United States v. Almazan-Becerra, 537 F.3d

7    1094, 1098 (9th Cir. 2008) (citing Parilla v. Gonzales, 414 F.3d

8    1038, 1044 (9th Cir. 2005)).

9        On March 15, 2010, defendant pleaded nolo contendere to a

10   violation of Cal. Penal Code § 647.6(a)(1).  During the plea

11   colloquy, the Court asked if the parties would "stipulate to a

12   factual basis based on the information contained in the police

13   reports," and defense counsel so stipulated.  (Def. Ex. J,

14   USAO_001320).  The Court therefore found a factual basis for the plea

15   based on the parties' stipulation.  (Id.)  The immigration judge

16   could therefore rely on the police report in determining whether

17   defendant's conviction was an aggravated felony under the modified

18   categorical approach.

19       Under 8 U.S.C. § 1101(a)(43)(A), a deportable aggravated felony

20   includes the "murder, rape, or sexual abuse of a minor."  The generic

21   federal definition of sexual abuse includes "illegal sexual acts

22   performed against a minor by a parent, guardian, relative, or

23   acquaintance."  Pallares-Galan, 359 F.3d at 1100.  Cal. Penal Code §

24   647.6(a) does not categorically fit this definition because the

25   statute prohibits conduct that would be merely irritating or

26   annoying, such as propositioning a minor for sex without actually

27   touching the minor.  Id.  The factual basis supporting defendant's

28   plea, however, includes the fact that defendant "reached over [and]

forcibl[y] grabbed [the 15-year-old minor's] penis over his pants and
squeezed." (Def. Ex. J at USAO_1309). This "indisputably falls
within the common, everyday meaning" of the words "sexual," "abuse,"
and "minor." Pallares-Galan, 359 F.3d at 1100 (quoting United States
v. Baron-Medina, 187 F.3d 1144, 1147 (9th Cir. 1999)). It is
therefore a match for "sexual abuse of a minor" under the modified
categorical approach. Defendant's misdemeanor conviction was
therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(A),
making him statutorily ineligible for TPS. See United States v.
Alvarez-Gutierrez, 394 F.3d 1241, 1242 (9th Cir. 2005) (holding that
misdemeanor offenses may qualify as "aggravated felonies" under 8
U.S.C. § 1101(a)(43)(A)). USCIS was within its right to withdraw
defendant's TPS application.

> ### c. Defendant was not prejudiced by USCIS's withdrawal of his Temporary Protected Status

In order to establish prejudice from an alleged due process
violation under § 1326(d), the alien must show a "'plausible grounds
for relief' from the removal order, that is, more than a theoretical
possibility of relief." United States v. Flores, 901 F.3d 1150, 1162
(9th Cir. 2018) (quoting United States v. Raya-Vaca, 771 F.3d 1195,
1205-07 (9th Cir. 2014)). Where the relevant form of relief is
discretionary, the alien must "show that, in light of the factors
relevant to the form of relief being sought, and based on the 'unique
circumstances of [the alien's] own case,' it was plausible (not
merely conceivable)" that discretion would be exercised in the
alien's favor. See United States v. Barajas-Alvarado, 655 F.3d 1077,
1089 (9th Cir. 2011) (quoting United States v. Corrales-Beltran, 192
F.3d 1311, 1318 (9th Cir. 1999)). Here, defendant can make no such

1  showing.  Not only did USCIS properly classify defendant's conviction

2  as an "aggravated felony," making him statutorily ineligible for TPS,

3  the IJ chose not to exercise discretion on defendant's behalf.  He

4  cannot show prejudice as a result.

5          2.   The IJ Did Not Violate Defendant's Due Process Rights
              by Impeaching Defendant with his Underlying Conviction
6             Documents

7               a.   Impeachment Evidence Is Admissible During
                    Immigration Proceedings
8

9      It is well settled that the Federal Rules of Evidence do not

10  apply in immigration removal proceedings.  Trias-Hernandez v. INS,

11  528 F.2d 366, 369 (9th Cir. 1975).  Instead, immigration courts may

12  consider "all reliable information," including "information outside

13  the confines of a record of conviction," (Anaya-Ortiz v. Holder, 594

14  F.3d 673, 677 (9th Cir. 2010) (quoting Matter of N-A-M-, 24 I. & N.

15  Dec. 336, 342 (B.I.A. 2007)), so long as it "is probative and its

16  admission is fundamentally fair" (Sanchez v. Holder, 704 F.3d 1107,

17  1109 (9th Cir. 2012) (per curiam) (quoting Espinoza v. INS, 45 F.3d

18  308, 310 (9th Cir. 1995)).  When making discretionary determinations,

19  such as a grant of TPS, IJs may consider evidence of "unfavorable

20  conduct, including criminal conduct which has not culminated in a

21  final conviction."  Matter of Tomas, 21 I&N Dec. 20, 3 (1995).

22      "The burden of establishing a basis for exclusion of evidence

23  from a government record falls on the opponent of the evidence, who

24  must come forward with enough negative factors to persuade the court

25  not to admit it."  Espinoza, 45 F.3d at 310.  Where an alien "has

26  offered no evidence to show that the form contains material errors,"

27  there is no right to demand cross-examination.  Espinoza, 45 F.3d at

28  310; cf. Bogle v. Garland, 21 F.4th 637, 651 (9th Cir. 2021) ("In

11

1   looking at whether proceedings were fundamentally fair ..., courts

2   may consider whether a petitioner had 'ample opportunity to

3   challenge' the evidence against him but did not." (quoting Wang v.

4   Attorney Gen., 898 F.3d 341, 350 (3d Cir. 2018))).  Moreover, none of

5   defendant's cited cases require cross examination of witnesses

6   underlying impeachment documents, but rather have found that using

7   defendant's own statements for impeachment "did not render his

8   hearing fundamentally unfair."  Saidane v. I.N.S., 129 F.3d 1063,

9   1066 (9th Cir. 1997).

10      Here, the IJ made clear that the arrest report and probation

11  report were being admitted purely for purposes of evaluating whether

12  defendant warranted a "favorable exercise of discretion and for

13  purposes of impeachment."  (Def. Ex. I at USAO 000040.)  In doing so,

14  he also indicated that the unavailability of the witnesses whose

15  statements were reflected in the reports would be factored into the

16  weight that the Court gave such evidence.  (Bailey Decl., Ex. 8 at

17  USAO_001008-USAO_001009; Ex. 3 at USAO_001050-USAO_001056.)

18  Defendant, for his part, introduced no evidence to cast doubt on the

19  reliability of the documents, nor to rebut the factual statements

20  contained therein, other than his own self-serving testimony in which

21  he effectively claimed that all of the witnesses in the reports,

22  including the minor victim and the investigating officer, were lying.

23  Defendant's testimony, impeached by his own prior statements and

24  otherwise unsupported, is not sufficient to show material errors in

25  the underlying reports such that exclusion was warranted.  Sanchez v.

26  Holder, 704 F.3d 1107, 1109 (9th Cir. 2012) (holding that Sanchez was

27  not entitled to cross-examine the Form I-213 preparer because "she

28  provided no basis for the IJ to ... conclude" that the form was

12

inaccurate);  cf. Angov v. Lynch, 788 F.3d 893, 902-04 (9th Cir. 2015) (holding that the agency could reasonably credit a document, even though it lacked certain indicia of reliability, because of the "almost complete absence of rebuttal evidence" offered by the alien).

Regardless, the IJ was, in fact, permitted to rely on the arrest report in making his determination; as discussed above, the arrest report was incorporated into the factual basis for defendant's plea as stipulated by the parties.  (Def. Ex. J at USAO_001319-USAO_001321.)  It was therefore part of the conviction record in his criminal case and admissible in the immigration proceeding. Accordingly, the IJ did not err in considering these documents in determining whether defendant warranted the Attorney General's discretionary grant of TPS.

> b. *Defendant did not suffer prejudice from the IJ's consideration of law enforcement reports related to his conviction*

Once again, defendant cannot show prejudice.  Defendant's speculation that the IJ would have granted defendant temporary protected status but for this alleged violation is belied by the record.  At no time throughout the underlying proceedings did defendant offer any credible evidence to undermine the description of the offense conduct contained in the reports, and his statements were directly contradicted by his crime of conviction.  (Ex. 6 at USAO_000034); Matter of M-H-, 26 I&N 46, 50-51 (BIA 2012) (holding that an IJ may predicate an adverse credibility finding regarding the events underlying a crime where the respondent's testimony is inconsistent with the elements of the offense, and rejecting the respondent's claims that he only pled guilty to bring his criminal proceedings to a conclusion); see also Matter of D-R-, 25 I&N Dec.

13

445. 454 (BIA 20 I 1) (explaining that an IJ is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record), remanded on other grounds, Radojkovic v. Holder, 599 F. App'x 646 (9th Cir. 2015).  There is ultimately no "plausible" basis to believe that the IJ would have reached any other conclusion with respect to defendant's request for TPS.  See Hernandez v. Garland, 52 F.4th 757, 768 (9th Cir. 2022); Espinoza, 45 F.3d at 311; Sanchez, 704 F.3d at 1109.

**V.   CONCLUSION**

Defendant cannot collaterally challenge the withdrawal of his TPS in a motion under 8 U.S.C. § 1326(d), nor can he show that he was deprived of judicial review.  Even overcoming those threshold matters, defendant cannot establish that his due process rights were violated for the withdrawal of a discretionary privilege, nor can he establish prejudice.  Accordingly, defendant's motion should be denied.

## **CERTIFICATION**

The undersigned, counsel of record for plaintiff United States of America, certifies that this brief contains 3,667 words, which complies with the word limit set by court order dated April 23, 2025.


Dated: May 21, 2025

_____
LINDSAY M. BAILEY
ALIX R. SANDMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1        <u>**DECLARATION OF LINDSAY M. BAILEY**</u>

2        I, Lindsay M. Bailey, declare as follows:

3        1.    I am an Assistant United States Attorney for the Central

4   District of California.  I am one of the attorneys assigned to

5   represent the United States in this matter.

6        2.    Attached hereto as Exhibit 1 is a true and correct copy of

7   defendant's Application for Temporary Protected Status signed on

8   March 26, 2001, as it appears in defendant's Alien File ("A-File).

9        3.    Attached hereto as Exhibit 2 is a true and correct copy of

10  the I—797A, Notice of Action, valid from January 8, 2014 through

11  March 9, 2015, as it appears in defendant's A-File.

12       4.    Attached hereto as Exhibit 3 is a true and correct copy of

13  the Transcript of Hearing for Removal Proceedings dated July 14,

14  2017.

15       5.    Attached hereto as Exhibit 4 is a true and correct copy of

16  the Notice to Appear dated December 7, 2012, as it appears in

17  defendant's A-file.

18       6.    Attached hereto as Exhibit 5 is a true and correct copy of

19  the Transcript of Hearing for Removal Proceedings dated June 27,

20  2013.

21       7.    Attached hereto as Exhibit 6 is a true and correct copy of

22  the Decision of the Board of Immigration Appeals, dated July 10,

23  2019, as it appears in defendant's A-file.

24       8.    Attached hereto as Exhibit 7 is a true and correct copy of

25  the Transcript of Hearing for Removal Proceedings dated August 15,

26  2017.

27  ///

28  ///

9.    Attached hereto as Exhibit 8 is a true and correct copy of the Transcript of Hearing for Removal Proceedings dated October 7, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on May 21, 2025.

LINDSAY M. BAILEY
Declarant